UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT A. H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-00060-RLY-TAB |
| | ) |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Robert H. suffers from coronary artery disease, gout, high blood pressure, restless leg syndrome, post-traumatic stress disorder, depression, and anxiety. He applied for Social Security Benefits in October 2021. The Social Security Administration ("SSA") denied his claims initially and upon reconsideration. After a hearing, the Administrative Law Judge ("ALJ") held that Robert is not disabled. Robert then filed this suit for review of the ALJ's decision under 42 U.S.C. § 405(g).

The court referred the matter to the Magistrate Judge under 28 U.S.C. § 636(b). The Magistrate Judge recommended that the court affirm the ALJ's decision. For the

---

[1] To protect the privacy of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

reasons set forth below, the court **OVERRULES** the objection and **ADOPTS** the Magistrate Judge's Report and Recommendation.

I.     Background

    A.     ALJ Review

Robert filed an application for a period of disability and disability insurance benefits. He also filed an application for supplemental security income, alleging disability. Robert alleged disability beginning on March 1, 2020, in both applications. The SSA denied his claims initially and upon reconsideration. Robert then requested a hearing before an ALJ. The ALJ found that Robert was not disabled.

In concluding that Robert was not disabled, the ALJ followed the five-step sequential evaluation described in 20 C.F.R. § 416.920(a). At step one, the ALJ concluded that Robert had not engaged in substantial gainful activity since the alleged onset of his disability. (Dkt. 9-2 at 14). At step two, the ALJ concluded that Robert had the severe impairment of coronary artery disease, with a history of stenting and gout. (*Id.*). The ALJ also found that he had the non-severe impairments of high blood pressure, restless leg syndrome, post-traumatic stress disorder, depression, and anxiety. (*Id.* at 14–16).

In finding that Robert's mental impairments were non-severe, the ALJ considered the "broad functional areas of mental functioning" known as the "paragraph B" criteria. (*Id.* at 15). The criteria are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 15–16). The ALJ held that the criteria did not

support any limitations. First, there were "no reported difficulties with memory and his memory was normal on exam." (*Id.* at 15). Second, although Robert reported not leaving his home and feeling irritable, the record showed that, on exam, he had "normal mood and affect" and "unremarkable behavior." (*Id.*). Third, despite Robert claiming that he struggled to concentrate, the record showed that Robert had an "unremarkable thought process," a normal attention span, and normal concentration. (*Id.*). Fourth, Robert reported feeling anxious and depressed, but the record evidence showed that he attended therapy, had fair insight and judgment, and never reported needing assistance to perform daily activities. (*Id.*).

At step three, the ALJ concluded that Robert did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 16–17).

After step three, but before step four, the ALJ assessed Robert's residual functional capacity (RFC) and his past relevant work. (*Id.* at 17–20). In making these findings, the ALJ considered record evidence and the opinions of two impartial medical experts. (*Id.*). The record evidence showed that Robert alleged disability due to "coronary artery disease, angioplasties, stents for blockages, post-traumatic stress disorder, manic depression, anxiety, gout, high blood pressure, bipolar disorder, and panic attacks." (*Id.* at 18). And Robert testified that (1) he "stopped working after he had a nervous breakdown," (2) "stress triggers his gout," (3) he "feels anxious and depressed," (4) he has "little energy and find[s] it difficult getting along with others and leaving the home," and (5) he "has difficultly finishing tasks and getting out of bed." (*Id.*).

Of the two medical experts, Dr. Griffin provided an opinion on Robert's mental impairments. She "opined that [Robert] ha[d] no limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself." (*Id.* at 20). Dr. Griffin also noted that Robert "can work, but should be encouraged to participate in psychotherapy." (*Id.*). The ALJ found Dr. Griffin's opinion persuasive because "it [was] supported by a detailed explanation and [was] consistent with the overall evidence." (*Id.*). There were no medical opinions in the record identifying a more restrictive limitation based on Robert's mental impairments.

After considering all the medical evidence, the ALJ determined Robert's RFC. She found that he could perform light work with the following limitations: "[Robert] can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Robert] can occasionally climb ladders, ropes, or scaffolds." (*Id.* at 17). Then at Step 4, the ALJ asked a vocational expert about Robert's ability to work given his age, education, work experience, and medical limitations.[2] (*Id.* at 21, 98–99). The vocational expert answered that Robert could perform his past work as an automated cutting machine operator. (*Id.* at 99). In her decision, the ALJ found that Robert could perform his "past relevant work as an Automated Cutting Machine Operator." (*Id.* at 21). Because the ALJ found that Robert could perform his past relevant work, he was not disabled, and the ALJ did not need to proceed to step five. (*Id.* at 13).

---

[2] The content of the hypothetical question is not relevant to the disposition of this motion.

4

## B. Magistrate Judge's Report and Recommendation

After receiving an unfavorable decision from the ALJ, Robert filed a Complaint for Review of the ALJ's decision. (Dkt. 1). Robert raised two issues. First, the ALJ erred by not considering a line of evidence when analyzing Robert's mental impairments. Second, the ALJ failed to properly address his subjective symptoms. The court referred the matter to the Magistrate Judge, who issued his Report and Recommendation. The Magistrate Judge concluded that the ALJ's decision was supported by substantial evidence and therefore recommended that the court affirm the determination that Robert is not disabled. This matter now comes before the court on Robert's Objections to Magistrate Judge's Report and Recommendation. (Dkt. 17).

All other facts relevant to the disposition of this objection are addressed in the discussion section.

## II. Legal Standard

The court reviews the Magistrate Judge's Report and Recommendation de novo. Fed. R. Civ. P. 72(b)(3). The court "may accept, reject, or modify the recommended disposition." *Id.*

The court reviews the ALJ's decision to ensure that it "applies the correct legal standard and is supported by substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Under the substantial evidence standard, the court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and

5

the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). In making this determination, the court must consider the entire administrative record but not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

### III.    Discussion

Robert objected to the Magistrate Judge finding that the ALJ supported her decision on his mental impairments with substantial evidence. He then states that he "reiterates his arguments in the opening and reply brief to assert that the Magistrate's opinion is not supported." (Dkt. 17 at 3). The Commissioner contends that Robert waived any objection to the Magistrate Judge's findings on the subjective symptom analysis. (Dkt. 19 at 1 n.1). The court agrees. Robert failed to raise a specific objection or develop an argument regarding the Magistrate Judge's subjective symptom analysis, which amounts to a waiver of any objection to that section of the Report and Recommendation. *See Bramlett v. Schular*, No. 11-97-GPM, 2013 WL 193442, *2 (S.D. Ill. Jan. 17, 2013); *see also Bradley v. Vill. of Univ. Park, Ill.*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellant may waive . . . [an] argument in many ways, such as by . . . failing to present a developed argument."). Accordingly, the court will review de novo only the Magistrate Judge's recommendation regarding Robert's mental impairments. The court will review the subjective symptom recommendation for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

6

### A. Mental Impairments Analysis

Robert's main argument is that the ALJ erred in finding that his mental impairments were not severe because she improperly relied on Dr. Griffin's opinion and failed to consider contrary evidence. He also argues that, because she found that his mental impairments were not severe, she erred by failing to account for his mental impairments in the RFC.

"The claimant bears the burden of submitting medical evidence establishing [his] impairments and [his] residual functional capacity." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). But "[e]stablishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). In considering the evidence, the "ALJ need not . . . discuss every piece of evidence in the record," but she cannot "ignore[e] an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)).

Dr. Griffin was an impartial medical expert in the case, and she opined that Robert's medical record failed to reveal a need for a limitation based on his mental impairments. (Dkt. 9-9 at 3). Dr. Griffin cited three pages from the record in support, which were documents from Robert's visits to the doctor for physical ailments, not for his mental health. (*Id.*). And two of the cited documents were from before Robert's alleged onset date. (*See* Dkt. 9-7 at 174, 390).

True, Dr. Griffin's opinion did not take into account all the evidence in the record documenting Robert's mental impairments. But after finding Dr. Griffin's opinion

7

persuasive, the ALJ noted that "there are no opinions in the record regarding any more restrictive limitations." (Dkt. 9-2 at 20). So, even if the ALJ incorrectly relied on Dr. Griffin's opinion, Robert failed to put forth a medical opinion indicating that he needed work limitations based on his mental impairments.

Robert argues that there were two medical opinions supporting a limitation that the ALJ failed to consider. Both documents said Robert was totally disabled and that he could not work for two three-week periods. (Dkt. 9-8 at 12–15, 21–24). Nurse Practitioner Roy signed both documents and stated that the disability resulted from anxiety and depression related to COVID-19. (*Id.*). Neither document identified any limitation that Robert needed to continue working in the future. (*See id.*). The Magistrate Judge found that Nurse Practitioner Roy's statements were not "medical opinions" as defined by the SSA regulations. The court agrees. They do not qualify as medical opinions because the documents did not address what Robert could do despite his impairments or his ability to perform the mental demands of work activities. *See* 20 C.F.R. § 404.1513(a)(2) (defining medical opinion evidence).

Although the statements were not medical opinions, the ALJ was still required to consider them as part of the medical evidence in the record. Robert argues that the ALJ "ignored all of the evidence documenting psychological difficulties in favor of highlighting the normal findings from physical exam visits." (Dkt. 11 at 12). The ALJ's decision proves the contrary. The ALJ noted that although Robert's impairments could cause the symptoms he complained of, they were not supported by the objective medical evidence in the record. (Dkt. 9-2 at 8). The record contains reports documenting

8

Robert's symptoms caused by his medical impairments, but the objective evidence in many of the documents indicated that his impairments were not severe. As the ALJ pointed out, doctors consistently noted that Robert had normal mood and affect, unremarkable behavior, normal attention and concentration, and normal memory. (*Id.* at 10). And some of the ALJ's citations came from Robert's therapy session notes, where most of Robert's subjective symptoms were documented. (*See, e.g.*, Dkt. 9-8 at 35, 41).

This is not a case where the ALJ failed to consider evidence contrary to her conclusion. Rather, the ALJ considered the evidence but chose not to walk through every piece in making her determination. ALJs are subject to a minimal articulation requirement, *see Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), so the ALJ did not need to discuss all the evidence in making her determination, *see Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). Thus, even though the evidence may have also supported a decision that Robert's mental impairments were severe, the ALJ's decision that his mental impairments were not severe was supported by substantial evidence, and the court will not upend that decision. And because the ALJ's decision was supported by substantial evidence, she did not err by not including a limitation in his RFC based on his mental impairments.

Robert also raised two other arguments that the court will briefly address. First, the ALJ overlooked the fact that he attended his therapy from home, which played a role in his therapist noting that his mental functioning was normal. Second, the ALJ improperly relied on Robert's lack of inpatient hospitalization in finding that his mental impairments were not severe.

9

Robert cites *Senora W. v. O'Malley*, No. 21-cv-4411, 2024 WL 4346613 (N.D. Ill. Sept. 30, 2024), in support of his first argument. In *Senora W.*, the record contained strong evidence that the claimant's symptoms were triggered by interacting with people in a work environment and that she did not get along with others, but the ALJ discounted that evidence without adequately explaining why. *Id.* at *14–16. Instead, the ALJ cited the claimant's testimony that she was doing well at home, "overlook[ing] the fact that the more controlled and comfortable environments of home or a therapist's office are quite different from the work setting." *Id.* at *16. As in *Senora W.*, the ALJ did not explicitly address that some of the objective medical evidence came from Robert's telephone therapy sessions, where he was likely more comfortable than he would be in a work environment. But unlike in *Senora W.*, this case lacks overwhelming evidence showing that a work environment would trigger the symptoms of Robert's mental impairments.

Robert noted that he struggles to leave the home and to interact with others, but the evidence does not show that working in his previous job would trigger the symptoms. Notably, when the ALJ questioned the vocational expert about the jobs Robert could perform, Robert's attorney asked the vocational expert what jobs would be available if a limitation were imposed based on Robert's mental impairments. (Dkt. 9-2 at 101–02). The vocational expert said he would not change his answer—that Robert could perform his past work as an automated cutting machine operator—because the job would only have brief and inconsequential interactions with coworkers, and Robert would not interact with the general public. (*Id.* at 102). Thus, this is not a case where there was overwhelming evidence suggesting that Robert's mental impairments affected his ability

10

to work. Instead, the hearing testimony indicated that Robert could do his past work without an increased burden on his mental impairments. Other evidence in the record did not indicate otherwise. Accordingly, the fact that Robert attended his therapy over the phone was not something the ALJ needed to explain away like the ALJ in *Senora W.*

And as for Robert's second argument, the ALJ did not place too much emphasis on his lack of inpatient hospitalization. When she identified all the evidence in the record indicating that Robert did not need a limitation based on his mental impairments, his lack of inpatient hospitalization was the final point she considered. She did not elaborate and say it was important in her decision, nor did she say that he needed a history of inpatient hospitalization to show he needed a limitation. Rather, she said that, taking all the evidence in the record together, including his lack of inpatient hospitalization, Robert failed to show that he needed a limitation based on his mental impairments. The ALJ did not err in conducting that analysis.

**B.    Subjective Symptom Analysis**

Because no objection was made to the Magistrate Judge's subjective symptom analysis, the court reviews it for clear error. *Johnson*, 170 F.3d at 739. The Report and Recommendation concluded that the ALJ's subjective symptom analysis was supported by substantial evidence and recommended that the court deny Robert's remand request.

After reviewing the record, the Report and Recommendation, the parties' motions and memoranda, and the applicable law, the court finds no clear error in the Magistrate Judge's Report and Recommendation.

### IV.    Conclusion

For the reasons addressed above, the court **OVERRULES** Robert's objection, (Dkt. 17), and **ADOPTS** the **Report and Recommendation** issued by the Magistrate Judge.  (Dkt. 16).

**IT IS SO ORDERED** this 4th day of December 2025.

                                                    RICHARD L. YOUNG, JUDGE
                                                   United States District Court
                                                   Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.